**In the Matter of J. L. D., a juvenile, Appellant.**

No. 16686.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 22, 1976.

Michael B. Smithers, Lake Jackson, for appellant.

Ogden L. Bass, Crim. Dist. Atty., A. B. Crowther, Jr., Asst. Dist. Atty., Angleton, for appellee.

PEDEN, Justice.

Appeal from an order modifying disposition in a juvenile proceeding.

On September 12, 1975, an adjudication hearing had been held and J. L. D. found to have engaged in delinquent conduct in being absent from home for substantial lengths of time without parental consent on six occasions between April 22 and July 3, 1975, and in stealing a bicycle. On October 8, 1975, the court had entered a disposition order committing him to the custody of the Texas Youth Council, but the order of commitment was suspended and he was placed on probation in the custody of his parents. One of the conditions of the probation was:

"(10) To attend the school in which he is enrolled unless written permit from parent is available; two unexcused absences from this date and/or misconduct that brings about suspension or expulsion will be sufficient for revocation procedure; . . ."

On November 20, 1975, a hearing to modify disposition was held pursuant to § 54.05 of the Family Code, Vernon's Texas Civil Statutes. The court found that J. D. had violated condition 10 of his probation, modified the disposition order of October 8, 1975, ordered him committed to the custody of the Texas Youth Council, and recited this specific finding:

"That on the 28th day of October, 1975, the said child was suspended from Alvin Junior High School, the school in which he was then enrolled, for misconduct namely; on or about the 15th day of October, 1975, disrupting the classroom, on or about the 22nd day of October, 1975, fighting in class, on or about the 28th day of October, 1975, being disrespectful to and threatening a teacher."

The appellant's only point of error is that the modification order should be reversed because he was suspended from school without a hearing pursuant to the due process requirements of the Fourteenth Amendment of the United States Constitution.

We affirm. The appellant has not shown that he was suspended from school without due process.

We review the evidence adduced at the November 20 court hearing. The appellant was represented by counsel and does not assert that he was denied any rights to due process at that hearing. The incidents of October 15, October 22, and October 28 were related by the teachers who were involved, by an assistant principal, Mr. Whitlock, and by J. L. D. and his mother. Each of them was cross-examined. It appears that J. L. D. was suspended for one day on October 15 and again on October 22.

A teacher, Mary Marek, testified that on October 15, 1975, J. L. D. had been picking on a boy named Donnie and admitted threatening to beat him up if Donnie got him in trouble. She said J. L. D. was disrupting the class, and she took him to Mr. Whitlock, the assistant principal.

Another teacher, Kent Ballard, related that on October 22, 1975, while J. L. D. was playing dodge ball with some other boys in a physical education class, one of them called him a clown and J. L. D. hit him. Ballard sent him to the office, but he doesn't know whether any disciplinary action was taken.

Gary D. Nunn is also a teacher at Alvin Junior High School. He did not know J. L. D. on October 28, 1975, when he saw him walk into a cart carrying a film projector that another teacher was pushing. She told him not to run into her cart on purpose, and he said "I didn't run into your cart on purpose" in a very loud voice. Nunn walked over and grabbed the shirt of J. L. D. and, because he had raised his voice so much, told him not to talk to a teacher like that. J. L. D. jerked away and made "a very smart remark." Nunn said "Let's go to the office and let them talk about it." J. L. D. walked very slowly, so Nunn told him to walk faster. J. L. D. said he would walk as fast as he wanted to. Nunn gave him a little push and J. L. D. turned around and clenched his fists. When they got to the office, Nunn asked someone to find Mr. Martin, the principal. J. L. D. was smirking and "smarting off," and Nunn said "Don't say anything else." J. L. D. replied that he was going to hit him in the mouth. Mr. Martin came out and said he would call J. L. D.'s mother.

Mr. Cliff Whitlock, an assistant principal, testified that J. L. D. had a poor attitude in October, 1975. At that time he was being detained after school, still making up time for truancies during the previous school year. J. L. D. was suspended on October 28 for threatening teachers. He knows of three temporary suspensions. One was over an incident in physical education class, and he was allowed to return as soon as his mother could come in for a conference. They have tried several times to counsel with him, but his attitude is that they are not going to do anything to him. On Monday, November 17, J. L. D. called and asked when he could come back to school; he talked to Mr. Martin. Whitlock was told by Mr. Martin that he felt it best that J. L. D. remain out of school until the court decided what to do with J. L. D.

The appellant's mother testified that on November 17, when J. L. D. called Mr. Martin, he told her he would readmit J. L. D. to school after she had had a conference with his teachers, the assistant principals and himself. J. L. D. testified that on October 28 he didn't see the cart coming before it hit him on the foot. He said the teacher pinched his arm and he told her in a "louder than usual" voice that he didn't do it on purpose. Mr. Nunn shoved him even though he was walking at his normal speed. He is sure he didn't threaten to hit Mr. Nunn in the mouth. J. L. D. testified that Martin came in a little later, talked to him, and suspended him from school on that day because of that incident.

He admitted having told Donnie he was going to beat him up and having also gotten in trouble in September. He said he hit the boy in P. E. class for calling him a clown.

At the conclusion of the evidence the trial judge stated that he found that J. L. D. "had violated the terms and conditions of his probation in that he had engaged in conduct which resulted in the suspension or expulsion from school, which suspension or expulsion was justified."

The United States Supreme Court recently discussed in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, at pages 739–741, 42 L.Ed.2d 725 (1975) some notice and hearing requirements imposed by the Due Process Clause in cases of short (not more than ten days) suspensions from public schools:

"We do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency. Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.

"There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is. Lower courts which have addressed the question of the *nature* of the procedures required in short suspension cases have reached the same conclusion. *Tate v. Board of Education,* supra, 453 F.2d [975] at 979; *Vail v. Board of Education,* supra, 354 F.Supp. [592] at 603. Since the hearing may occur almost immediately following the misconduct, it follows that as a general rule notice and hearing should precede removal of the student from school. We agree with the District Court, however, that there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academ-

ic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable, as the District Court indicated.

" . . . .

"We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose in each such case even truncated trial type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the suspension process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process."

Having examined all the evidence in this case, we cannot say that J. L. D. denied the charge against him when Mr. Martin talked to him on October 28, that he was not given a hearing by Mr. Martin or offered a hearing as soon as practicable, that he was not given an opportunity to explain his version of the facts, that he was not told what he was accused of doing, or that he was not given an opportunity to confront and cross-examine witnesses supporting the charge or to call his own witnesses. We note that he was still out of school when in court 23 days after the suspension and that a few days earlier Mr. Martin had expressed the view that J. L. D. should not be readmitted until the court had decided his case, but we have also seen that when J. L. D. and his mother called the principal he said he would readmit J. L. D. after a conference. This testimony does not establish that J. L. D. could not have been readmitted earlier if he and his mother had sought it, nor does it prove that he was expelled indefinitely or that the

term of his expulsion was fixed at more than ten days.

Affirmed.